COMMONWEALTH *vs.* JOHN A. DEVEAU.

No. 91-P-1210.

Worcester. October 5, 1992. - January 14, 1993.

Present: KASS, SMITH, & IRELAND, JJ

*Practice, Criminal*, Argument by prosecutor, Cross-examination by prose-
cutor. *Witness*, Cross-examination.

No substantial risk of a miscarriage of justice at a criminal trial was
demonstrated by the prosecutor's permissible argument with respect to
the defendant's character witnesses [10-11]; nor was there error in the
prosecutor's arguments on the defendant's motive and opportunities to
commit the crimes [11-12].

The record of a criminal trial did not support the defendant's claim that
the prosecutor improperly cross-examined him on his relationship with
children other than the three complaining witnesses. [12-13]

In the circumstances of a criminal trial no substantial risk of a miscarriage
of justice was created by the prosecutor's improper insinuation in clos-
ing argument that the victims had suffered further sexual trauma dur-
ing lawful cross-examination by defense counsel. [13-14]

At a criminal trial, the judge properly denied the defendant's motion for a
mistrial, after giving the jury strong and precise instructions not to con-
sider an improperly suggestive question posed by the prosecutor to a
defense witness. [14-15]

INDICTMENTS found and returned in the Superior Court
Department on August 10, 1989.

The cases were tried before *James P. Donohue*, J.

*Lee A. Drizin* for the defendant.

*Katherine E. McMahon*, Special Assistant District Attor-
ney, for the Commonwealth.

KASS, J. During his summation, the prosecutor thrice made
comments which the defendant contends slipped over the line
of proper argument. We think, in context, those remarks are
pardonable. Such toxic effect as may have flowed from an
improper question on cross-examination was effectively neu-
tralized by the trial judge. We affirm the judgments convict-

ing the defendant, after a jury trial, of multiple counts of offenses which may generically be described as child molestation.[1]

1. *Claims of improper argument.* What the defendant Deveau particularly emphasizes in his appeal is that the prosecutor unfairly left it with the jury that Deveau matched the profile of a pedophile. The first occasion in the course of the argument when this occurred came as the prosecutor commented about the testimony of character witnesses for the defendant:

> "And really when it comes to character and reputation, don't we all know people who are unsavory people, who have made mistakes in their lives, maybe serious mistakes, who can get a parade of people to come in here and say in essence they are a nice guy or a nice lady. Might we do the same for someone? But is it really evidence of character?"

> "And really when you come right down to it, is the behavior that's alleged in these indictments the kind of behavior that is subject to public scrutiny so as to affect someone's reputation? This isn't something, somebody does in public. This is why people like Mr. Deveau get children involved, and get their confidences, and do it in secret. These aren't things that he talks about at city council meetings so everybody can assess his reputation."

> "These things become a matter of reputation when these people like Mr. Deveau get caught."

It is the "people like Mr. Deveau" language that the defense says spread an unfair stain. No objection to the quoted passage was made at trial, so we approach the claim of error

---

[1] The convictions were for: unnatural and lascivious acts with a child under the age of sixteen (G. L. c. 272, § 35A); open and gross lewdness (G. L. c. 272, § 16); indecent assault and battery on a child under the age of fourteen (G. L. c, 265, § 13B); soliciting a child under the age of eighteen to pose for pornographic purposes (G. L. c. 272, § 29A); and dissemination of matter harmful to minors (G. L. c. 272, § 28).

now assigned to it on the basis of the substantial risk of a miscarriage of justice standard. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *King,* 23 Mass. App. Ct. 88, 90 (1986). We think that risk is insubstantial. The prosecutor was attempting to meet whatever impact the character endorsements of the defendant had made on the jury by arguing that those endorsements based on public perception were entitled to little weight in connection with the crimes charged, which by their nature were committed clandestinely. Counsel, while making closing speeches, are entitled to argue the evidence and fair inferences from it. *Commonwealth* v. *Paradise,* 405 Mass. 141, 152 (1989). Referring to "people like Mr. Deveau" had the unfortunate aspect of assuming the conclusion at which the government wanted the jury to arrive, i.e., that the defendant had committed acts of child molestation, but that, of course, was the government's position as prosecutor, and it is hardly likely that the jury would have been misled.

The second portion of the prosecutor's closing which the defendant attacks on appeal was the subject of an objection and a motion for a mistrial. The prosecutor spoke as follows:

> "And what about what the defense has shown you to show what I would suggest is opportunity and motive or motivation to commit the acts? A man who was home during the day all the time, according to the testimony of the defense witnesses. He worked for the graveyard shift. A man who invited children over to his house and had a dozen or more over there all the time, young boys and girls, a man who played with them, taught them gymnastics, a man who had unfettered access to the J.J. Newberry building. He had keys to it, a building eight times the size of this room, according to the owner. A man who liked to take children to that J.J. Newberry building, and a man interesting enough, ladies and gentlemen, who had an abiding interest in children, dating back to the fifties."

"Don't get me wrong. It's noble to want to help a child successfully develop and learn, to volunteer your time. That's a noble pursuit. I don't think any of us deny that when it's done genuinely and sincerely. But in the context of what's been told to you by those three girls, doesn't his history of involvement and interest in young children say something? Isn't it corroborative? And I suggest to you, on behalf of the Commonwealth, that it is in that context."

Viewed contextually, the import of what the assistant district attorney said was not that persons who have an interest in, and work with, children are prototypical child molesters. Rather, the argument bore on opportunity and conduct which the jury could be asked to consider as bearing on whether the government's case was plausible. That the prosecutor's remarks were distasteful may be inherent in the distastefulness of the underlying subject matter, but on analysis, what the prosecutor said was commentary on the evidence and an invitation to the jury to make allowable inferences from the evidence. In this regard the case stands altogether differently from *Commonwealth* v. *Day*, 409 Mass. 719, 722-724 (1991), in which the court held that it was error to receive expert witness testimony as substantive evidence of a criminal profile — a profile then matched with that of the defendant. Here, properly, evidence was not offered that the defendant fit a particular mold.

Ancillary to the point that the prosecutor's allusions to the defendant's interest in children were improper, the defendant calls in question the propriety of so much of the cross-examination of the defendant as delved into his relationship with children other than the three complaining witnesses in 1985, the year in which the criminal acts were alleged to have occurred. It may be sufficient to say on this score that there were no defense objections at trial to these aspects of the cross-examination. In any event, review of the entire cross-examination of the defendant discloses tangential inquiry about his history with children and not questions calculated to rivet the attention of the jury "on . . . incident[s] anterior

to the matter truly at bar." *Commonwealth* v. *Yelle*, 19 Mass. App. Ct. 465, 470 (1985).

The third portion of the government's closing which the defendant identifies as improper concerned comment about defense counsel's cross-examination of the three girls (they were ages ten, eleven, and thirteen at the time of trial) who were the complaining witnesses. Of that cross-examination the prosecutor said:

> "Now, what the defense told you about the victims' testimony or the commonwealth's witness' testimony to try and get you to think that there is a lot of doubt here or some reasonable doubt? Well, they point to the inconsistencies in the young victims' testimony. That's a time-honored tactic. Get the child on the stand, talk to her about testimony she has given to the grand jury on one page, without referring to the next page. Confuse them. You know, he had his way with them back in 1985. And this is a way of having his way with [them], through his lawyer, in 1989, on the stand. Take advantage of their age, relative intelligence, and ask them a million questions, get them to change their mind, or get them to show a failure of memory as to significant details. There is nothing new about that, ladies and gentlemen."

The prosecutor's insinuation that the victims had suffered further sexual trauma through lawful cross-examination by defense counsel was a crude impropriety. It is a comment that ought not to have been made. Nevertheless, the remark is a great deal less incendiary than the one which, upon proper objection, was determined to be reversible error in *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 537-540 (1991), or than that in *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 753-755 (1986). In both those cases there was an appeal to emotions of the jurors coupled with an effort to enlist the jurors on the side of the government as avengers of wrongs suffered by the alleged victims. Here, by contrast, the prosecutor did not suggest that the jury had a duty to convict

because of the victim's suffering, the vice of cases such as *McLeod* and *Sevieri* and *Commonwealth* v. *Ward*, 28 Mass. App. Ct. 292, 294-295 (1990). We are prepared to credit the jury with common sense which would enable them to hear the offensive statement as a rhetorical flourish in aid of the argument that they should regard indulgently any inconsistencies provoked from the complaining witnesses by aggressive cross-examination. See *Commonwealth* v. *Anderson*, 411 Mass. 279, 287 (1991). That defense counsel at trial did not object to this portion of the closing argument is a sign that what was said sounded less exciting at trial than appellate counsel now would have it seem. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 n.8 (1987); *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. 338, 346, *S.C.*, 401 Mass. 302 (1987). The jury were also made aware by instructions from the judge before closing argument began that the speeches they would hear were not evidence.

· 2. *Improperly suggestive question.* On the second day of trial, the prosecutor sought to ask one of his witnesses if he had personal knowledge whether in 1985 the defendant had rented X-rated videos. Upon objection, the judge excluded the question. Yet, next day, the prosecutor asked one of the defendant's character witnesses if it would surprise him to know that the defendant was a frequent renter of X-rated videos. The judge excluded the question and at once said: "The jury will disregard that. That has absolutely nothing to do with this case." Defense counsel's motion for a mistrial was denied. To be sure, the prosecutor's question, in view of the earlier ruling (made after discussion with counsel at side bar), was of doubtful propriety, but the judge gave unmistakeable instruction that the subject was off limits.[2] We ex-

---

[2]A prosecutor, on cross-examination, may inquire of a witness who has spoken to reputation if the witness has heard rumors inconsistent with the good reputation to which the witness has vouched on direct, *Commonwealth* v. *Montanino*, 27 Mass. App. Ct. 130, 136 (1989), but, here, the subject had been declared off limits and, in any event, asking a witness if he would change his mind if he knew certain adverse facts is improper because it suggests the existence of facts not in evidence. See *Commonwealth* v. *Kamishlian*, 21 Mass. App. Ct. 931, 933-934 (1985).

pect that jurors will follow strong and precise instructions from the trial judge. *Commonwealth* v. *Clifford,* 374 Mass. 293, 298 (1978). Denial of the motion for a mistrial was well within the trial judge's broad discretion. *Commonwealth* v. *Cunneen,* 389 Mass. 216, 223 (1983). *Commonwealth* v. *Denson,* 16 Mass. App. Ct. 678, 681 (1983).

*Judgments affirmed.*