COMMONWEALTH *vs.* TED LORENZETTI.

No. 98-P-257.

Norfolk. February 8, 1999. - October 1, 1999.

Present: ARMSTRONG, BROWN, & PORADA, JJ.

*Rape. Indecent Assault and Battery. Evidence,* Fresh complaint. *Practice, Criminal,* Instructions to jury, Argument by prosecutor.

At the trial of indictments for sexual assault, the judge's limiting instructions, given contemporaneously with the admission of fresh complaint evidence, were deficient; however, no substantial risk of a miscarriage of justice arose where the judge's final charge properly informed the jury of the limited use of that evidence. [39-42]

At the trial of rape indictments, the testimony of five fresh complaint witnesses was not shown to constitute improper "piling on" of such testimony, nor did it improperly exceed the scope or detail of the complainant's testimony. [42]

At the trial of rape indictments, the prosecutor's improper, inflammatory, and disparaging remarks regarding the defendant's right to cross-examine the complainant did not create a substantial risk of a miscarriage of justice, in light of the evidence at trial and the judge's instructions that arguments were not evidence. [42-44] BROWN, J., dissenting.

No reversible errors appeared on the record of a criminal trial with respect to certain evidence admitted or excluded. [44]

INDICTMENTS found and returned in the Superior Court Department on November 20, 1996.

The cases were tried before *Robert W. Banks,* J.

*Richard J. Fallon* for the defendant.

*Michele M. Armour,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. A jury found the defendant guilty of two counts each of rape and indecent assault and battery of a person over fourteen years of age. On appeal, he claims error primarily in the excessive "piling on" of fresh complaint testimony and improper closing argument by the prosecutor.

The Commonwealth offered this evidence. The complainant,

Janice Doe (a pseudonym), testified that on May 19, 1996, when she was seventeen years old, she spent the night at the home of a family friend, Karen Thomashay. The defendant's wife, Cheryl Lorenzetti, and the Lorenzettis' children lived at the house with Thomashay, who was Cheryl's mother. The defendant did not live there but frequently visited, and was visiting there on the night in question. Janice, who was sleeping on a couch in the living room, awoke sometime between 12:15 and 12:30 A.M. when the defendant pulled a blanket over her feet. He began touching her breasts, and put his finger inside her vagina. Keeping her eyes closed, she feigned the initial stages of waking up, prompting the defendant to return to his wife's bedroom. Forty-five minutes later, he came back and again began to touch her breasts and inserted his finger in her vagina. Janice screamed for help, and both Cheryl and Karen Thomashay responded. When Janice explained to the two women what had happened, they told the defendant to leave the premises and called the police. He asserted his innocence but complied; there was no evidence that he later tried to elude police when sought and arrested.

The Commonwealth presented no physical evidence or eyewitness testimony, but to reinforce Janice's credibility called five witnesses who provided fresh complaint evidence in varying degrees of detail. Karen Thomashay simply stated that when she came out at 1:30 A.M. and asked Janice what had occurred, Janice said, "Ted has been touching me." Cheryl Lorenzetti testified that Janice told her that she "c[ouldn't] believe that he could do this to [her]" and that he had put his finger "inside of" her and touched her breasts. Officer Terrence Connolly, who responded to the scene shortly before 2:30 A.M., related an account by Janice that was as detailed as her direct testimony. Janice's mother recounted Janice's description of the incident to her within about two hours of its occurrence; the mother's account, although more detailed than Cheryl Lorenzetti's, was less detailed than Janice's own testimony. Finally, Elaine Gakern, an emergency room nurse who spoke with Janice at about 3:00 A.M., testified that Janice told her she had awakened to "somebody touching her on her breasts and 'down below' " and that, after a respite, she screamed when the assailant returned and started to touch her again.

The defense attempted to show that the allegations were the product of a nightmare from which Janice awoke in a confused

fright while the defendant was placing a blanket over her for warmth. There was evidence that Janice was sleeping at the Thomashay house because she had been having horror-movie-induced nightmares, had been receiving prank hang-up phone calls, was afraid to sleep at her home alone while her mother worked the night shift, and had watched a movie that night that involved animals terrorizing children. The defense focused on inconsistencies in Janice's recollection and suggested she confused a dream with reality. She testified, for example, that between the two episodes of touching she lay awake, crying and wondering what to do, but Officer Connolly testified that she told him she was asleep during that interim. Janice stated on direct that the first touching occurred at about 12:30 A.M., but it was stipulated that a report by an investigating detective stated that Janice told him it occurred at 11:15 P.M. The defense also relied on testimony by the nurse and a social worker that when, in accordance with certain medical paperwork, Janice was asked the routine questions whether the assailant had penetrated her vagina with his penis or ejaculated, she stated that she did not know.

1. *Fresh complaint evidence.* The defendant first argues that the number of fresh complaint witnesses,[1] coupled with faulty contemporaneous jury instructions on the limited use of their testimony, warrants a reversal.

"[T]he repetition of fresh complaint testimony creates a risk that the jury will use the details of the fresh complaints as substantive evidence that the crime actually occurred. *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646 (1991). In order to counter this risk, [the Supreme Judicial Court] recommended in *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992), that a trial judge instruct the jury as fresh complaint testimony is admitted, and again during the judge's charge, that fresh

---

[1]The defendant insists that there were six fresh complaint witnesses. We count five. The would-be sixth witness, the social worker John Doyle, was called by the defense to undercut Janice's credibility by showing that, when Doyle asked Janice if she had been penetrated by her assailant's penis, she stated that she did not know. The Commonwealth's cross-examination, which showed that other details of what Janice told Doyle about the incident were consistent with her testimony, was permissible simply to repair Janice's credibility. Even if Doyle were countable as a fresh complaint witness, the jury would have understood the judge's correct final charge on fresh complaint as applying to his testimony; he was plainly one of the "medical personnel" to whom the judge referred in giving that instruction.

complaint testimony may not be used as substantive evidence of the crime." *Commonwealth* v. *Trowbridge,* 419 Mass. 750, 761 (1995). As the defendant did not object to any of the judge's instructions on this point, we review for a substantial risk of a miscarriage of justice.[2] *Commonwealth* v. *Gabbidon,* 398 Mass. 1, 4-5 (1986).

The contemporaneous instructions were deficient. The instruction given at the time of the first fresh complaint evidence is set out at the margin.[3] Apart from general ambiguity, the instruction is flawed for failing to define "corroborate" so as to apprise the jury that they could not use the testimony as substantive proof of the acts alleged. See *Commonwealth* v. *Scanlon,* 412 Mass. 664, 674 (1992). The reference to "what actually happened" did not by itself communicate that idea. Compare *id.* at 673-674; *Commonwealth* v. *Lamontagne,* 42 Mass. App. Ct. 213, 220 (1997). Even if it did, the instructions given as to later witnesses were deficient. In two instances (concerning Cheryl Lorenzetti and Janice's mother), the judge simply told the jury to "[r]emember my instructions" without specifying which instructions. No instruction was given in connection with the nurse's testimony. When Officer Connolly testified, the judge stated, "Jurors you will remember my instruction on fresh complaint. It's being offered only as to whether or not it corroborates what the victim said on the witness stand. If it doesn't,

---

[2] The defendant argues that, even though he did not object to any of the contemporaneous instructions, he qualifies for the favorable standard of review for objected-to trial errors, see *Commonwealth* v. *Alphas,* 430 Mass. 8, 13 n.7 (1999), by virtue of his objection to the testimony of the third fresh complaint witness, Officer Connolly. As to him, counsel argued, "[I]t's starting to pile on," and he later generally objected to the testimony of the nurse, Elaine Gakern, and the cross-examination of the social worker, John Doyle. (He did not object when the prosecutor began to elicit the fresh complaint testimony of Janice's mother.) In our view, the defendant's objections did not apprise the trial judge of a challenge specifically to the jury instructions. Thus, the proper standard of review is whether the erroneous instructions created a substantial risk of a miscarriage of justice.

[3] "There is an exception to the hearsay rules which we refer to in the law as statements which are in the nature of a 'fresh complaint,' and those statements are statements which are made by a person who is alleged to be a victim of the sexual assault. Those statements made by that person given to a person shortly after the incident which is alleged to have occurred are admitted for a very limited purpose, as to whether or not what that person says is corroborative what they testify to on the stand. Not what actually happened, but whether or not it was corroborative."

disregard it completely."[4] That instruction also failed to caution the jury against using the evidence substantively.

However, the judge's final charge properly informed the jury of the limited use of the evidence and the witnesses to whom that instruction applied. The charge was not objected to at trial and is not challenged on appeal. We are aware of no decision holding that a substantial risk of a miscarriage of justice arises solely from deficient contemporaneous instructions when the jury were later instructed correctly, although the importance of contemporaneous instructions, as called for by *Commonwealth* v. *Licata, supra,* has been emphasized in such decisions as *Commonwealth* v. *Trowbridge*, 419 Mass. at 761, and *Commonwealth* v. *Lorette*, 37 Mass. App. Ct. 736, 738 n.3, 741 n.4 (1994), *S.C.*, 422 Mass. 1014 (1996). If *Licata* had been intended to express a per se rule, however, it presumably would have stated that a judge "must" give the instructions sua sponte; instead, it used the word "should," and the *Licata* guidance has subsequently been referred to as "recommended" and not a "strict requirement." See *Commonwealth* v. *Trowbridge*, 419 Mass. at 761; *Commonwealth* v. *Vieux*, 41 Mass. App. Ct. 526, 533 (1996), cert. denied, 520 U.S. 1245 (1997).

The impact of the lack of proper contemporaneous instructions has thus been evaluated on a case-by-case basis, and the reversals in this area have involved additional prejudicial factors not present here. In *Commonwealth* v. *Brouillard*, 40 Mass. App. Ct. 448, 454-457 (1996), the substantial risk did not arise only from missing contemporaneous instructions: the testimony of two witnesses was overly graphic, one witness was prejudicially emotional, and an expert witness impermissibly vouched for the truthfulness of the complainants where the case rested entirely on credibility. See *Commonwealth* v. *Trowbridge*, 419 Mass. at 760-762 (substantial risk where jury was never properly instructed); *Commonwealth* v. *Lorette*, 37 Mass. App. Ct. at 741-743 & n.4 (no contemporaneous instruction; final instruc-

---

[4]The defendant argued that the last sentence deprived him of the benefit of inconsistencies between Janice's trial testimony and what she had told the fresh complaint witnesses. The judge later instructed the jury, however, to "[t]ake into consideration any statements that may have been made on other occasions which could have been inconsistent with the testimony given at trial, and whether or not those differences are significant or insignificant." The arguments of both counsel were in good measure devoted to highlighting or downplaying such inconsistencies. The jurors were not left unaware of their role in weighing any inconsistent statements.

tion did not specify which witness it referred to; highly inflammatory evidence of parents' emotional states was admitted and argued by prosecutor). Although the Commonwealth's case was not overwhelming and turned on credibility as in *Brouillard*, *Trowbridge*, and *Lorette*, there was no other significant impropriety. The contemporaneous instructions did not create a substantial risk of a miscarriage of justice. Compare *Commonwealth* v. *Scanlon*, 412 Mass. at 673-675 (no error where deficient final instruction referred back to correct contemporaneous instruction); *Commonwealth* v. *Vieux*, 41 Mass. App. Ct. at 534-535 (correct contemporaneous instructions, no final instruction).

The mere fact that there were five fresh complaint witnesses does not affect the result; "there is no per se rule of how many fresh complaint witnesses may testify." *Commonwealth* v. *Trowbridge*, 419 Mass. at 761. We recognize that "repetitive testimony from several witnesses regarding the details of the complaint may lend undue credibility to the complainant's testimony." See *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 442 (1994), quoting from *Commonwealth* v. *Licata*, 412 Mass. at 659. Here, only two of the five witnesses testified about the alleged acts with specificity, and neither exceeded the scope or detail of what was testified to by Janice herself. See *Commonwealth* v. *Lavalley*, 410 Mass. at 645 ("fresh complaint evidence which is a mere summary of the victim's testimony at trial is cumulative and not prejudicial to the defendant"). Reversals involving the "piling on" of fresh complaint testimony have suffered from other infirmities not appearing here. See *Commonwealth* v. *Trowbridge*, 419 Mass. at 761 (four witnesses; jury never instructed properly); *Commonwealth* v. *Powers*, 36 Mass. App. Ct. 65, 68-71 (1994) (four witnesses, two of whom were experts, who vouched for credibility of complainant); *Commonwealth* v. *Swain*, 36 Mass. App. Ct. at 436-442 (six witnesses; complaints were at outer limits of freshness). There is no similar basis for reversal here. Compare *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 444-445 & n.5, cert. denied, 519 U.S. 1015 (1996) (five witnesses; no error); *Commonwealth* v. *Lamontagne*, 42 Mass. App. Ct. at 219-220 (five witnesses; no substantial risk of miscarriage of justice).

2. *Prosecutor's closing.* Defense counsel began his closing argument by emphasizing that "[Janice Doe] is not on trial," even though he had attacked her credibility. That argument

drew this response from the prosecutor at the top of her summation, to which the defense did not object:

> "[L]adies and gentlemen of this jury, this is the case about the rape and the sexual assault of [Janice Doe]. This is the case about [Janice Doe]. And the defense has said that [Janice Doe] is not the one on trial, but throughout this case look at the one that is being attacked, attacked once again, attacked on May 20, 1996 by the defendant, and attacked on the stand by having to go through this grueling experience and explain every single thing she did that night, every single person she spoke to, explain what these people had to say. [Janice Doe] was put on trial. As much as we try to sugar coat it, that's exactly what happened in this case."

The comparison of the defendant's lawful cross-examination of the complainant to her alleged sexual assault and rape was improper and unprofessional; it was improperly inflammatory and disparaging of the defendant's confrontation rights. It was no more provocative, however, and probably less so, than the comment that did not require reversal in *Commonwealth* v. *Deveau*, 34 Mass. App. Ct. 9, 13 (1993), where it was argued that the defendant was "having his way with" the victims again on the stand just as he had "had his way with" them during the alleged molestations. The impermissible argument here was merely a segue to a permissible one: that Janice's credibility was central, and that she should be believed. The prosecutor went on for fifteen transcript pages after the improper comment to argue properly the evidentiary reasons why Janice's testimony was credible. "We are prepared to credit the jury with common sense which would enable them to hear the offensive statement as a rhetorical flourish in aid of th[at] argument . . . ." *Id.* at 14. We also note that the judge instructed the jury before closing arguments and again in his final charge that such arguments were not evidence. "That defense counsel at trial did not object to this portion of the closing argument is a sign that what was said sounded less exciting at trial than appellate counsel now would have it seem." *Ibid.* The cases on which the defendant relies, *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 753-755 (1986), and *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 537-541 (1991), are distinguishable: in each of those cases, the prosecutor's comment was more extreme because, unlike

here, it suggested "that the jury had a duty to convict because of the victim's suffering." *Commonwealth* v. *Deveau*, 34 Mass. App. Ct. at 13-14. The improper commentary here, while close to the line, did not create a substantial risk of a miscarriage of justice.

3. *Other arguments.* It lay within the judge's discretion to admit evidence that the defendant departed at the request of his wife, Cheryl. The prosecutor's closing argument that the departure showed consciousness of guilt was not objected to. The probative force of the argument was too weak to amount to a substantial risk of a miscarriage of justice.

No harm arose from the prosecutor's question whether a neighbor smoked a marijuana cigarette with the defendant on the night in issue. The judge sustained an objection to the question, which was never answered. No curative action was requested. The later question to the defendant about what brand of cigarettes he smoked that evening was not objected to, and the answer ("Marlboro") was not prejudicial.

The nurse's testimony that a finger inserted into a vagina would not necessarily cause visible injury or elicit statements of vaginal pain was within her expertise. She had been a registered nurse for twenty-nine years, was certified in emergency room nursing and crisis intervention, and expressed familiarity with procedures for evaluating and treating rape victims. The prosecutor's question probing Janice's reason for testifying was fair in light of the defendant's challenge to her motives in prior examination.

Concluding that none of the alleged errors warrants reversal, we affirm the convictions.

*So ordered.*

Brown, J. (dissenting). I think the defendant did not receive a fair trial, much less one "which all parties . . . [strove] to make impeccable." *Commonwealth* v. *Paiva*, 16 Mass. App. Ct. 561, 563 (1983). *Commonwealth* v. *Vaughn*, 32 Mass. App. Ct. 435, 435 (1992) (Constitution requires that government's conduct of trial be free of all that is inconsistent with highest standards of professional conduct). First, the prosecutor's closing speech carelessly and unwisely crossed the line between impermissible and fair argument; she flagrantly plowed ground

that our courts have pleaded with prosecutors to avoid at their peril. Another basis would be, as the majority concedes, the erroneous contemporary fresh complaint instructions. And unnecessary mischief was insinuated at various other points: the introduction of a mere departure as evidence of consciousness of guilt and "flight"[1]; the nurse's inculpatory "expert" opinion explaining the absence of vaginal injury; and the prosecutor's irrelevant questions regarding whether the defendant had smoked marijuana on the night in question, all matters not conducive to a fair trial.

Here we go again — cautioning prosecutors to prepare closing argument carefully and admonishing them to adhere earnestly to the requisite ethical and professional standards and to make a good faith attempt to cause the trial to be as fair as possible. See, e.g., *Commonwealth* v. *O'Brien*, 377 Mass. 772, 778 (1979), and cases cited.

---

[1] See, e.g., *Commonwealth* v. *Carrion*, 407 Mass. 263, 276-277 (1990).