## COMMONWEALTH *VS.* SUSAN DUMAIS.

No. 02-P-1334.

Worcester. October 15, 2003. - November 20, 2003.

Present: MASON, BROWN, & BERRY, JJ.

*Motor Vehicle,* Operating under the influence. *Intoxication. Evidence,* Intoxication, Field sobriety test. *Practice, Criminal,* Mistrial, Argument by prosecutor.

At the trial of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, the judge acted within his discretion in denying the defendant's motion for a mistrial predicated upon a police officer's improper references to a field sobriety test that had been administered to the defendant and that had been the subject of an earlier motion to exclude, where the officer's words were innocuous in context, where the judge sustained defense counsel's objections to the references and offered to give a curative instruction that defense counsel declined, and where it was speculative to infer that the jury would have concluded from the officer's incomplete references to the test that another test had been administered to the defendant and that the defendant had failed it. [72-73]

At the trial of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, the prosecutor's unobjected-to closing argument, in which he commented that he thought the defendant was intoxicated and that the Commonwealth's witnesses were credible, was improper but did not occasion a substantial risk of a miscarriage of justice, where the prosecutor, in essence, argued that his case had been proved, but did not misstate evidence, attempt to divert the jury's attention from their proper function as fact finders, or improperly appeal to their sympathy. [73-75]

COMPLAINT received and sworn to in the Fitchburg Division of the District Court Department on February 22, 1996.

The case was tried before *Edward J. Reynolds,* J.

*Dana Alan Curhan* for the defendant.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted of operating a motor

vehicle while under the influence of intoxicating liquor. She appeals, claiming (1) her motion for a mistrial should have been allowed after a witness for the Commonwealth began to testify regarding a field sobriety test that had been excluded; and (2) the prosecutor's closing argument, to which there was no objection, created a substantial risk of a miscarriage of justice.

1. *Factual background.* The Commonwealth presented evidence that on the night in question, Officer Dean Romano of the Fitchburg police department was dispatched to the scene of a motor vehicle accident sometime after 11:00 P.M. Upon arrival at the scene, he noticed that a pickup truck had gone off the road and struck a telephone pole directly between its headlights, in what Romano referred to as a "center punch." The telephone pole was less than five feet from the road. Officer Romano testified on cross-examination that the steering wheel was significantly bent over, and the vehicle was severely damaged. Romano engaged the defendant (who was outside her vehicle) in conversation, and in doing so, noticed she had blood on her lip and nose area, and appeared to have a leg injury. Romano noticed a "strong odor of alcoholic beverage" emanating from the defendant, and also noticed the defendant's eyes were glazed and watery. In response to a question by Romano, the defendant stated she had consumed two drinks. Several times, Romano asked the defendant if she wished to go to the hospital. The defendant declined, indicating she was concerned about insurance.

Romano decided to administer field sobriety tests. He first asked the defendant to recite the alphabet, which she did, albeit in nursery-rhyme fashion. Romano proceeded to the "one-legged stand" test. After some hesitation, the defendant picked up one leg and counted to ten "very quickly." At this point, Sergeant John O'Leary, Romano's supervisor, arrived at the scene.

Sergeant O'Leary described the defendant as appearing disheveled, with bloodshot eyes. He also observed the defendant was bleeding from the nose. Sergeant O'Leary testified he noticed the odor of "intoxicating alcoholic beverages." He noted the steering wheel was "collapsed."

O'Leary administered the "heel-to-toe" test. Several times,

the defendant touched her foot to the ground to regain balance. O'Leary testified the defendant twice attempted to begin the test before he instructed her to do so. She also did not keep her feet together as instructed. O'Leary also required the defendant to perform the one-legged stand test. According to Romano, the defendant had "some trouble" with this test. O'Leary and Romano then concluded the defendant was impaired, and arrested her.

For her part, the defendant testified that on the night in question, she arrived home at about 5:00 P.M., had dinner, and then, over the course of several hours, as she alternately watched television and did chores, consumed two light beers. She decided to drive to her boyfriend's residence. He was not home, and on the way back, she tried to retrieve a pack of cigarettes from her purse. She could not find them by feeling around, so she took her eyes off the road to look into her purse. According to the defendant, "the next thing [she] knew, [she] looked up, and the pole was there." The defendant described the weather as having been very foggy and drizzling.

The defendant testified further that after the accident, she felt stunned. Her face had struck the steering wheel, and her knee had struck the vehicle's open ashtray. She had not been wearing a seat belt. The defendant eventually went to the hospital, was treated for a broken nose, and received stitches on both the inside and the outside of her mouth.

2. *Motion for mistrial.* The defendant claims her motion for a mistrial should have been allowed. The motion was predicated upon Officer Romano's apparently unexpected[1] attempt to explain Sergeant O'Leary's administering a "horizontal gaze nystagmus" test. The officer did not explain the test, or for that matter even fully state its name. Rather, Romano testified, "Sergeant O'Leary did another test with the horizontal gaze — ," at which time defense counsel objected. After the judge sustained the objection, and in response to another question from the prosecutor as to what field sobriety test Romano had seen O'Leary administer,

---

[1]Before trial, the defendant had filed, and the Commonwealth had assented to, a motion in limine to exclude reference to the "horizontal gaze nystagmus" test.

Romano began to testify, "Horizontal — ." Defense counsel objected again, and at side bar, requested a mistrial.

This testimony was improper, in the absence of an expert to explain the test properly. See *Commonwealth* v. *Sands*, 424 Mass. 184, 187-189 (1997). Nevertheless, the judge was within his discretion in denying the motion for a mistrial. See *Commonwealth* v. *Gordon*, 422 Mass. 816, 827 (1996). The words the officer used (in total, "horizontal gaze . . . Horizontal") were innocuous in context. The judge sustained counsel's objection, and seems to have offered to give the jury a curative instruction. Defense counsel declined, preferring to allow the impermissible words, as the judge put it, to "be lost in the shuffle."

The defendant contends that, although the officer's answers were incomplete, the jury still heard some testimony to the effect that another field sobriety test had been administered. We think it speculative to infer, as the defendant urges, that the jury would have concluded from the three words the officer uttered that another test — in addition to the alphabet, the heel-to-toe, and the one-legged stand — had been administered.[2] We think it equally speculative that the jury also would have inferred the defendant had failed this additional test. Additionally, we think it remote that even had the jury reached these conclusions, they would have afforded the test greater weight, viewing it, as the defendant claims, as having a "scientific basis." In short, the judge acted within his discretion in denying the motion for a mistrial.

3. *Closing argument.* The defendant also takes issue with a portion of the prosecutor's closing argument. The complained-of remarks are as follows:

> "Is there a reason why she can't do those field sobriety tests? Was it because she was in shock? I think she was intoxicated. I think the evidence of the accident, the police officers — I think that it was painfully clear that they were being credible. Do you think Officer Romano was up there

---

[2]While it is true the judge did not strike that portion of Officer Romano's testimony that another test was conducted, there was a good reason for this: another test *was* conducted — the heel-to-toe test, about which the officer went on to testify.

gilding the lily? I think it was painfully obvious how truthful he was."

This was indeed impermissible argument. See *Commonwealth v. Torres*, 437 Mass. 460, 465 (2002). We have repeatedly made clear that such rhetoric is intolerable. See *Commonwealth* v. *Griffith*, 45 Mass. App. Ct. 784, 787-789 (1998), and cases cited. See also *Commonwealth* v. *Dowdy*, 36 Mass. App. Ct. 495, 501-503 (1994) (Brown, J., dissenting), and cases cited therein. Nonetheless, despite our dismay over yet another violation of the rules that govern closing argument, because the defendant did not object, our inquiry is confined to whether the remarks occasioned a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Springer*, 49 Mass. App. Ct. 469, 476 (2000). We think that they did not.

This is due, among other factors, to the nature of the prosecutor's argument. The prosecutor was, in essence, arguing that his case had been proved, that is, (1) the defendant was impaired by alcohol; and (2) the prosecution's witnesses should be believed. A juror can be expected to recognize that a prosecutor is likely to believe in his own case. See *Commonwealth* v. *Mitchell*, 428 Mass. 852, 857 (1999). Indeed, the purpose of a closing argument is to convince the jury of the correctness of one's position. This is a different situation from when, for example, a prosecutor, through an expression of personal belief, implies he has knowledge of evidence beyond that which has been presented to the jury. See *Commonwealth* v. *Villalobos*, 7 Mass. App. Ct. 905, 905 (1979) (prosecutor's statement, "believe me, no one in Chelsea is selling [heroin] half-price to anybody," in conjunction with numerous other errors, created substantial risk of miscarriage of justice). See also *Commonwealth* v. *Ryan*, 8 Mass. App. Ct. 941, 941-942 (1979).

Neither did the prosecutor misstate the evidence, thereby creating a risk that the jury would render a verdict based on an inaccurate interpretation of critical testimony. Contrast *Commonwealth* v. *Coren*, 437 Mass. 723, 730-732 (2002). Nor did the prosecutor attempt to divert the jury's attention from their proper function as fact finders, and rather, for example, improperly appeal to their sympathy. Contrast *Commonwealth* v. *Lorette*, 37 Mass. App. Ct. 736, 742-743 (1994), *S.C.*, 422

Mass. 1014 (1996). Were that the case, the jury might believe they had a moral duty to convict. See *Commonwealth* v. *Sanchez*, 405 Mass. 369, 375-376 & n.4 (1989).

Ultimately, the critical question is whether the closing argument invited or compelled the jury to reach some conclusion they may not otherwise have reached. Here, the prosecutor's comments that he thought the defendant was intoxicated, and that his witnesses were credible, while impermissible, were unlikely to have so influenced the jury. See *Commonwealth* v. *Lorenzetti*, 48 Mass. App. Ct. 37, 43-44 (1999) (contrasting prejudicial effects of various prosecutorial errors in closing argument). But see *id.* at 44-45 (Brown, J., dissenting). While we are troubled by the statements,[3] we are convinced that the error did not materially influence the verdict, and thus, did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).[4]

The judgment of conviction is affirmed.[5]

*So ordered.*

---

[3]We also are troubled by the absence of even a "boilerplate" instruction by the judge that, for example, closing arguments are not evidence. However, as we discuss in the text, the prosecutor did not misstate evidence, which would make such an instruction more critical; rather, he argued too vigorously that his case was the better one, a proposition the jury can be assumed to expect from an advocate. See *Commonwealth* v. *Mitchell*, 428 Mass. at 857.

[4]Though we deem it of limited probative value, we note defense counsel's lack of objection, and the fact that the prosecutor's remarks amounted to about three sentences of material in a closing that covered eight pages of transcript, as having some bearing on whether, in the context of trial, the errors were sufficiently significant to make plausible an inference the jury's verdict might have been otherwise but for the errors. See *Commonwealth* v. *Lorenzetti*, 48 Mass. App. Ct. at 43-44.

[5]It appears from the record that sentencing was stayed pending appeal.