COMMONWEALTH *vs*. CHARLES D. LEACH
(and fifteen companion cases[1]).

No. 07-P-1336.

Plymouth. October 14, 2008. - February 27, 2009.

Present: COHEN, GRAHAM, & SIKORA, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Assault by Means of a Dangerous Weapon. Evidence,* Joint venturer, Statement of codefendant, Grand jury proceedings. *Joint Enterprise. Practice, Criminal,* Severance, Argument by prosecutor, Indictment, Grand jury proceedings. *Grand Jury.*

At the trial of indictments charging the defendants with assault and battery by means of a dangerous weapon and assault by means of a dangerous weapon, the judge did not err in denying motions for required findings of not guilty, where the Commonwealth's circumstantial evidence (i.e., the defendants were all present in a vehicle at the crime scene, at which seven shots were fired at the victims, and the defendants knew each other, knew the victims, and made statements to each other at a police station that both implicated them in the crimes and constituted attempts to conceal those crimes) was sufficient to prove involvement in a joint venture to commit the crimes. [762-764]

At the trial of indictments charging the defendants with assault and battery by means of a dangerous weapon and assault by means of a dangerous weapon, on a joint venture theory, the judge did not err in denying the defendants' motions in limine to exclude, as hearsay, statements of their alleged coventurers made at a police station, where the statements established the defendants' cooperative effort to conceal their crimes, and where the judge properly instructed the jury that they could consider the statements only if they found the existence of a joint venture apart from the comments, and that the statements were made in furtherance of the venture. [764]

A Superior Court judge did not abuse his discretion in denying two criminal defendants' motions to sever, where there were no allegations that the defendants' defenses were mutually antagonistic and irreconcilable, and where the circumstances of the case (i.e., the defendants were arrested together shortly after a shooting by an officer who had followed their motor vehicle from the scene of the crime, and the defendants made statements demonstrating complicity) rendered joinder for trial appropriate. [764-765]

In closing argument at a criminal trial involving multiple defendants, the prosecutor did not improperly comment on the failure of the defendants to

[1]Three against Charles D. Leach, four against John P. Dosreis, four against Jeffrey M. Fonseca, and four against Kevin L. Fonseca.

assert their innocence to the police, but rather, the prosecutor reminded the jury of certain omissions from a conversation that took place among the defendants, who spoke, bluntly and to each other, while agreeing to conceal their crimes [765-766]; further, any possible error arising from the prosecutor's alleged improper vouching for one of the Commonwealth's witnesses did not create a substantial risk of a miscarriage of justice, in light of the judge's instructions to the jury [766-767]; finally, there was no merit to a claim that the prosecutor's alleged misstatements of the evidence required a new trial [767-768].

The evidence presented to a grand jury was sufficient to warrant a finding of probable cause to issue indictments charging the defendants with assault and battery by means of a dangerous weapon and assault by means of a dangerous weapon, on a joint venture theory. [768-769]

INDICTMENTS found and returned in the Superior Court Department on June 4, 2004.

A motion to dismiss was heard by *Joseph M. Walker, III,* J., and the cases were tried before *Patrick F. Brady,* J.

*Cynthia A. Vincent Thomas* for Charles D. Leach.

*Pamela Lindmark* for Jeffrey M. Fonseca.

*Krista M. Larsen* for John P. Dosreis.

*Richard M. Russell* for Kevin L. Fonseca.

*John E. Bradley,* Assistant District Attorney, for the Commonwealth.

GRAHAM, J. After a trial that resulted in a hung jury, a second Superior Court jury convicted each of the defendants, John P. Dosreis, Jeffrey M. Fonseca, Kevin L. Fonseca, and Charles D. Leach (collectively, defendants), of one count of assault and battery by means of a dangerous weapon, and three counts of assault by means of a dangerous weapon, on a joint venture theory.

On appeal, we address claims that (1) the judge erred in denying motions for required findings of not guilty because the evidence was insufficient to prove involvement in a joint venture to commit the crimes (made by Dosreis, Jeffrey,[2] and Kevin); (2) the judge improperly allowed in evidence statements of the defendants under the joint venture exception to the hearsay rule; (3) the judge abused his discretion by denying the motions to sever (made by Dosreis and Jeffrey); and (4) the prosecutor committed several errors during his closing argument, thereby depriv-

---

[2] We refer to the Fonseca brothers by their first names for ease of reference.

ing the defendants of a fair trial. Dosreis separately contends that the evidence presented to the grand jury was insufficient to establish probable cause to arrest and indict him. We find no merit to any of the claims and, accordingly, affirm the convictions.

*Facts.* The jury could have found the following facts. At approximately 7:45 P.M., on April 9, 2004, brothers Claudio and Jair Monteiro, their cousin Gilson Monteiro, and Antonio Pires were standing in the driveway of the brothers' home at 249 Green Street in Brockton, when gunfire erupted. One of the bullets hit Pires in the leg, near his knee. Pires and Jair[3] turned and each saw a green motor vehicle driving past them, away from the scene, Jair observing that the vehicle was being pursued by a police cruiser.[4] The cruiser was operated by Brockton police Officer James F. Sniger, a thirty-year police veteran who had been at the corner of Green and Lexington Streets, about seventy feet from 249 Green Street, responding to an unrelated call.

After hearing six or seven gunshots coming from the area of 249 Green Street, Sniger saw a green sport utility vehicle (SUV) heading west, and accelerating, on Green Street. Concluding that the SUV was connected to the shooting, Sniger activated the cruiser's lights and siren, and followed the SUV, never losing sight of it. The SUV stopped behind a car at a posted stop sign at the intersection of Green and Highland Streets, some 700 feet from 249 Green Street. Jeffrey was in the driver's seat, his brother Kevin was in the passenger's side front seat, Dosreis was in the driver's side rear seat, and Leach was in the passenger's side rear seat. The windows on the driver's side of the vehicle were rolled up, while the rear passenger's side window was rolled almost all the way down and the front passenger's side window was partially down. Once back-up officers arrived, Sniger ordered the defendants out of the vehicle, arrested them, and advised them of their Miranda rights. The defendants later were transported to the Brockton police station.

After the defendants were arrested, the additional Brockton

---

[3]We use the first names of the Monteiros for ease of reference.

[4]Claudio and Jair identified the motor vehicle as belonging to their aunt. Claudio later learned from the police that one of the vehicle's occupants was his cousin, the defendant Jeffrey.

police officers who had arrived at the scene of the shooting walked in an easterly direction on Green Street. On the front lawn of 291 Green Street,[5] ten feet from the sidewalk, the police found a firearm later identified to be the one used in the shooting, a silver nine millimeter Smith and Wesson. The hammer of the loaded gun was in a cocked position and the ammunition clip was in the gun. A short distance west of 249 Green Street, the police retrieved several spent shell casings later determined to have been fired from the firearm recovered from 291 Green Street.

Meanwhile, at the Brockton police station, Brockton police Detective George Almeida, who is fluent in Cape Verdean Creole and in English, entered the police holding cell area and positioned himself behind a wall so that he was out of the view of the suspects. There he recorded, in shorthand, the defendants' conversations with each other. At trial, Almeida's testimony included portions of the statements of the defendants while they were in separate holding cells at the station. The first two defendants brought to the holding cells were Kevin and Dosreis, who made the following statements:[6]

KEVIN:    "Yo. We're lucky they didn't catch us with the gun."

DOSREIS:  "Yeah, dog."

KEVIN:    "If my bail's like 5G's, I'm out of here. I'm going to Cape Verde."

. . .

KEVIN:    "Yo, the dog found that shit. Did they tell you?"

DOSREIS:  "Yeah."

KEVIN:    "We're fucked. They're probably going to find that shit on the dude's hands."

. . .

---

[5]The passenger's side of the SUV would have looked out onto 291 Green Street as that vehicle drove in a westerly direction along Green Street.

[6]Almeida testified that this part of the conversation was mostly in English, but some of it was in Cape Verdean Creole.

KEVIN:    "They're probably going to find it on all of us."

Detective Almeida temporarily left the holding cell area while Jeffrey and, later, Leach were placed in separate holding cells near Kevin and Dosreis. Almeida then transcribed the following comments:

LEACH:    "Yo, they just shipped our clothes. Yo Dos . . . .  I should have just ran . . . on that old mother fucker. Yo, someone's dropping dime."

KEVIN:    "Yeah, I think it's you."

LEACH:    "No. Someone from Green Street. Yo Dos . . . [t]hem niggers were scared, huh?"

KEVIN and DOSREIS:    "Yo, shut the fuck up."

                            . . .

DOSREIS:    "Yo, Charlie? Don't say nothing about that thing,[7] okay? . . . Don't say nothing about that tip, okay?"

LEACH:    "Okay. I know. I know."[8]

*Discussion.* 1. *Motions for required findings.* At the close of the Commonwealth's case, and again at the close of all the evidence, the defendants moved for required findings of not guilty. Dosreis, Jeffrey, and Kevin argue here that the judge erred in denying their motions because the evidence failed to establish that these defendants were involved in a joint venture. Because the Commonwealth was proceeding against these defendants as joint venturers, it had to prove the elements of the underlying crimes, together with the elements of joint venture, namely that each "defendant was present at the scene of the crime, with knowledge that [one of his coventurers] intended to commit the crime or with intent to commit the crime [of murder, i.e., malice],

---

[7]According to Detective Almeida, "thing" is street vernacular for a firearm.

[8]Jeffrey, the driver of the SUV that fled from the scene of the shooting, made the fewest comments, simply assuring his brother (Kevin) and Dosreis that he had not said anything to the police.

and by agreement was willing and available to help the other[s] if necessary." *Commonwealth* v. *Stokes*, 440 Mass. 741, 745 (2004). In addition, "[t]o be convicted on a theory of joint venture for a crime that has possession of a weapon as one of its elements, the joint venturer must be shown to have had knowledge that the principal perpetrator had a weapon." *Commonwealth* v. *Ellis*, 432 Mass. 746, 762 (2000). "The jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979).

"The standard which we apply in reviewing the propriety of the denial of a motion for a required finding of not guilty is 'whether the evidence, read in a light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt.' " *Commonwealth* v. *Amado*, 387 Mass. 179, 186 (1982), quoting from *Commonwealth* v. *Basch*, 386 Mass. 620, 622 (1982). "We consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time. We also consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case." *Commonwealth* v. *Sheline*, 391 Mass. 279, 283 (1984). See *Commonwealth* v. *Walker*, 401 Mass. 338, 343 (1987).

The Commonwealth is permitted, as it did in this case, to rely solely on circumstantial evidence. See *Commonwealth* v. *Robertson*, 408 Mass. 747, 755 (1990). Moreover, the inferences drawn from the evidence need only be "reasonable and possible"; they need not be necessary inferences. *Commonwealth* v. *Dostie*, 425 Mass. 372, 376 (1997), quoting from *Brown* v. *Commonwealth*, 407 Mass. 84, 89 (1990), *S.C.*, 414 Mass. 123 (1993). Viewed in this light, the Commonwealth's evidence was clearly sufficient. The defendants all were present in a vehicle at the crime scene, at which seven shots were fired at the victims. The defendants knew each other, knew the victims, and made statements to each other at the police station that both implicated them in the crimes and constituted attempts to conceal them. Based on these factors, the evidence presented was sufficient to

satisfy each element of the offenses of which the defendants were convicted, on a joint venture theory.

2. *Statements of coventurers.* Before trial, each of the defendants filed a motion in limine, arguing that the oral statements of his alleged coventurers, made after arrest and while in custody, were inadmissible hearsay. The motions were denied by the trial judge, and over objection, Detective Almeida, who heard the statements, was permitted to testify to the conversations. "Out-of-court statements by joint venturers are admissible against each other if the statements are made 'both during the pendency of the [criminal enterprise] and in furtherance of its goal.' " *Commonwealth* v. *Braley*, 449 Mass. 316, 319 (2007), quoting from *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 543 (1990). See Mass.G.Evid. § 801(d)(2)(E) (2008-2009).

The Commonwealth was required to establish that the defendants participated in a joint venture, otherwise the contested statements would have been inadmissible. It could meet its burden by establishing an "adequate probability of the existence of a common venture, including participation by the given defendant." *Commonwealth* v. *Braley*, 449 Mass. at 320, quoting from *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 340 (1983). Here, nonhearsay evidence, summarized *supra*, sufficiently established an adequate probability of a joint venture.

The defendants' statements established their cooperative effort to conceal the crimes. Although the statements were made while the defendants were in custody, the conversations occurred shortly after the shooting, and clearly, the defendants were sharing information and "acting to conceal the crime that formed the basis of the enterprise." *Commonwealth* v. *Anderson*, 445 Mass. 195, 211 (2005), quoting from *Commonwealth* v. *Angiulo*, 415 Mass. 502, 519 (1993). In addition, the judge properly instructed the jury that they could consider the statements only if they found the existence of a joint venture apart from the comments, and that the statements were made in furtherance of the venture. See *Commonwealth* v. *Cruz*, 430 Mass. 838, 844-846 (2000). There was no error.

3. *Motion to sever.* Relying on *Commonwealth* v. *Moran*, 387 Mass. 644, 658 (1982), Dosreis and Jeffrey claim that they were deprived of their Federal and State constitutional rights to due

process and a fair trial by the judge's denial of their motions to sever.

"[S]everance is usually a matter within the sound discretion of the trial judge. . . . Joinder expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice time and energy to serve upon juries, and avoids the necessity of recalling witnesses to successive trials. . . . Such considerations, however, must yield at some point to the rights of the accused. That point is reached when the prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial. In such circumstances, and upon the making of a timely motion, failure to sever constitutes an abuse of discretion." *Id.* at 658. Severance is required when the defenses of defendants, tried jointly, are "mutually antagonistic and irreconcilable[, because t]he prejudice to each defendant [is] compelling." *Id.* at 659.

There are no allegations here that these defendants' defenses are mutually antagonistic and irreconcilable. Rather, these two defendants allege that statements made by the other defendants, either alone or in combination, were so toxic that the statements contaminated that defendant's own defense. That an individual defendant "would have had a better chance of acquittal" had he been tried alone did not compel severance. *Commonwealth* v. *Clarke*, 418 Mass. 207, 217 (1994), quoting from *Commonwealth* v. *Moran, supra*. In the circumstances of this case, where the defendants were arrested together shortly after the shooting by an officer who followed their motor vehicle from the scene of the crime, and made statements demonstrating complicity, joinder for trial was appropriate. Consequently, we discern no abuse of discretion by the judge in denying the motions to sever.

4. *Prosecutor's closing argument.* The defendants assert that the prosecutor made several serious errors during his closing argument.

a. First, the defendants claim that the prosecutor improperly commented on the defendants' failure to assert their innocence when they spoke to each other while in the holding cells, thereby impinging upon their right to remain silent, as guaranteed by the Fifth Amendment to the United States Constitution, see *Doyle* v.

*Ohio*, 426 U.S. 610, 617-618 (1976),[9] and art. 12 of the Massachusetts Declaration of Rights. The defendants also contend that the prosecutor's comments improperly shifted the burden of proof to the defendants.

The prosecutor made the following statements during his closing, to which the defendants objected and moved for mistrial:

> "Well, you heard all about the sixty-one lines that Detective Almeida transcribed. *Nowhere in those sixty-one lines did any of the defendants say anything like, 'Hey, why did they arrest us? We didn't do anything.'* . . . But what's the first thing Detective Almeida overhears? He overhears Kevin Fonseca say, 'Good thing they didn't catch us with the gun.' . . . *What does John Dosreis say in response? Does he say, 'Hey, Kevin, what are you talking about?'.* . . *Instead, he responds, 'Yea, dog.'* Taken in context, ladies and gentlemen, what do you suppose that means? Isn't there only one rational interpretation of that." (Emphasis supplied.)

A prosecutor may not draw the jury's attention to the fact that "a defendant exercised his constitutional right to remain silent in the face of police inquiry" for "the purpose of urging an inference of guilt." *Commonwealth* v. *Richotte*, 59 Mass. App. Ct. 524, 526 (2003), citing *Doyle* v. *Ohio*, 426 U.S. 610. Here, however, the prosecutor did not comment on the failure of the defendants to assert their innocence to the police; rather, he reminded the jury of certain omissions from a conversation that took place among the defendants, who spoke, bluntly and to each other, while agreeing to conceal their crimes. There was no error.

b. Jeffrey also argues that the prosecutor improperly vouched for one of the Commonwealth's witnesses when the prosecutor made the following statements:

---

[9]In *Doyle* v. *Ohio*, *supra* at 612, the defendants, who were arrested for selling marijuana, received the Miranda warnings and chose to remain silent. At trial, both defendants testified, claiming they had been framed. *Id.* at 613-616. On cross-examination, the prosecutor asked each of the defendants why he had not informed the police, at the time of his arrest, that he had been framed. *Ibid.* The United States Supreme Court held that the defendants' rights to due process had been violated because the Miranda warnings contained an implicit "assurance that silence will carry no penalty." *Id.* at 618.

"So what conclusions can you draw from that evidence and that evidence alone? Well, I suggest to you [that] you can conclude that the car that contained these four defendants was the car from which the shots were fired. We know that from Mr. Pires, the victim in this case, *a guy who has absolutely no motive to lie or distort the truth*. He saw what he saw. That was the car, according to him. And I suggest to you *there is absolutely no reason to distrust his testimony*." (Emphasis supplied.)

Jeffrey argues that these remarks went beyond the prosecutor's right of fair reply and constituted vouching for his witness's credibility. Even if the remarks crossed the fine line between proper argument and improper vouching,[10] any possible error did not create a substantial risk of a miscarriage of justice.

"In analyzing a claim of improper argument, the prosecutor's remarks must be viewed in light of the 'entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.' " *Commonwealth* v. *Lamrini*, 392 Mass. 427, 432 (1984), quoting from *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 885 (1984). Here, the judge informed the jury that it was their job to determine the facts based only on the evidence, told them that closing arguments were not evidence, instructed the jury that they were to determine whether the Commonwealth had proved its case against each defendant based solely on the testimony of the witnesses and the exhibits, and charged the jury regarding what they could consider in determining the credibility of the witnesses.

c. Kevin, apart from the other defendants, claims that the

---

[10]It is well settled that "[a] prosecutor can address, in a closing argument, a witness's demeanor, motive for testifying, and believability, provided such remarks are based on the evidence, or fair inferences drawn from it, and are not based on the prosecutor's personal beliefs." *Commonwealth* v. *Freeman*, 430 Mass. 111, 118-119 (1999). A prosecutor also may argue that a witness had no motive to lie as a "fair response to an attack on the credibility of a government witness." *Commonwealth* v. *Smith*, 450 Mass. 395, 408, cert. denied, 129 S. Ct. 202 (2008), quoting from *Commonwealth* v. *Chavis*, 415 Mass. 703, 713 (1993). A prosecutor may not, however, vouch for the testimony of a witness by "express[ing] a personal belief in the credibility of a witness, or indicat[ing] that he . . . has knowledge independent of the evidence before the jury," *Commonwealth* v. *Wilson*, 427 Mass. 336, 352 (1998), or suggest that a victim is inherently reliable merely because he subjected himself to the rigors of appearing in court, *Commonwealth* v. *Beaudry*, 445 Mass. 577, 587-588 (2005).

prosecutor misstated the evidence several times and that this accumulation of errors requires a new trial. Kevin's defense counsel neither objected to the comments, set forth in the margin,[11] nor requested that the judge give curative instructions. The failure of defense counsel to object to statements made by a prosecutor during the closing is a matter to which we attach significance. It is not only "a sign that what was said sounded less exciting at trial than appellate counsel now would have it seem," *Commonwealth* v. *Deveau*, 34 Mass. App. Ct. 9, 14 (1993), but it is also "some indication that the tone [and] manner . . . of the now challenged aspect of the prosecutor's argument were not unfairly prejudicial." *Commonwealth* v. *Toro*, 395 Mass. 354, 360 (1985). Moreover, here, the misstatements did not pertain to critical evidence, and the judge's lengthy, detailed, and accurate instructions mitigated the errors. See generally *Commonwealth* v. *Sanna*, 424 Mass. 92, 107 (1997); *Commonwealth* v. *Maynard*, 436 Mass. 558, 569-571 (2002).[12]

We reject Kevin's further claims that the prosecutor committed error by referring to the drive-by shooting as "gang activity," and by eliciting testimony from Detective Almeida that he was familiar with the voices of Kevin and Dosreis because he "ha[d] engaged them several times during the normal courses of [his] duty . . . [at] Brockton High School, when [he] was a school police officer." We are not persuaded by Kevin's claim that Almeida's response suggested, improperly, that Kevin and Dosreis had committed prior bad acts.

5. *Sufficiency of the indictments.* Finally, Dosreis contends

---

[11]First, Kevin notes the prosecutor claimed that Kevin, while speaking to Dosreis in the holding cell, said that "[the police are] going to find [gunpowder] *on all of our hands*" (emphasis supplied). In fact, Kevin had indicated that gunpowder probably would be found "on all of us." Second, the prosecutor erroneously claimed that Detective Almeida had become familiar with all of the defendants while working as a security officer in a local high school, when in fact Almeida was familiar only with Dosreis and Kevin.

[12]A reviewing court must make a judgmental assessment not of the specific challenged remarks in isolation but rather of the totality of the circumstances of each particular trial, including the opening statements and closing arguments of defense counsel, the prosecutor's entire argument, the evidence at trial, and the judge's instructions to the jury; "[a]ll these considerations must be undertaken on a case-by-case basis, and . . . no satisfactory bright line rules can be found or could be written." *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987).

that the grand jury did not hear sufficient evidence to find probable cause to issue the indictments, see *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982),[13] the indictments were fatally defective, and all subsequent proceedings taken in reliance upon them were void. See *Connor* v. *Commonwealth*, 363 Mass. 572, 574 (1973). We disagree.

The grand jury heard sufficient evidence to warrant a finding of probable cause. See *Commonwealth* v. *McCarthy, supra* at 163-164; *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450-452 (1984). The same witnesses who testified at trial also had testified before the grand jury, and gave testimony similar to that which they gave at trial. That evidence, which was sufficient to warrant Dosreis's conviction of the charges, was clearly sufficient to support the indictments. Thus, the motion judge (who was not the trial judge) did not err when he denied Dosreis's motion to dismiss.

*Judgments affirmed.*

---

[13]In *Commonwealth* v. *McCarthy, supra* at 163, the court held that "at the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him . . . ." The standard of probable cause is "considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding." *Commonwealth* v. *O'Dell*, 392 Mass. 445, 451 (1984).