WILLIAM JANSEN, petitioner.

Suffolk. March 7, 2005. - April 25, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Search and Seizure,* Buccal swab. *Practice, Criminal,* Subpoena duces tecum.

The judge in a criminal case properly ordered, at the request of the criminal defendant, that a nonparty (the petitioner here) submit to a buccal swab for deoxyribonucleic acid (DNA) analysis, where the criminal defendant demonstrated that the nonparty's DNA had significant relevance and evidentiary value to the criminal defendant's defense, and where the buccal swab test was reasonable in the circumstances of the case [115-119]; moreover, the order did not implicate the nonparty's rights under the Fourth Amendment to the United States Constitution or art. 14 of the Declaration of Rights of the Massachusetts Constitution, given that there had been no governmental involvement in the procurement of the nonparty's DNA by the criminal defendant [119-121].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 10, 2005.

The case was reported by *Sosman,* J.

*Glynis MacVeety* for the petitioner.

*Joan M. McMenemy,* Assistant District Attorney, for the Commonwealth.

*Lee D. Flournoy (Jeremia A. Pollard* with her) for Richard C. Lampron.

SPINA, J. We consider in this case a challenge to an order entered by a judge in the Superior Court, pursuant to Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979),[1] that William Jansen

---

[1]Rule 17 (a) (2) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 885 (1979), provides:

"A summons may also command the person to whom it is directed to produce the books, papers, documents, or other objects designated therein. The court on motion may quash or modify the summons if compliance would be unreasonable or oppressive or if the summons is being used to subvert the provisions of [Mass. R. Crim. P. 14, 378

submit to a buccal swab for deoxyribonucleic acid (DNA) analysis[2] at the request of Richard C. Lampron, the defendant in pending aggravated rape cases, who contends that the DNA analysis will yield exculpatory evidence that is highly relevant to his defense. Jansen is not a codefendant in the criminal proceedings against Lampron, nor has he been charged separately with any offense. Jansen sought review of the judge's order by filing a petition for relief pursuant to G. L. c. 211, § 3, with a single justice of this court, who reserved and reported the matter, without decision, to the full court.[3] For the reasons that follow, we affirm the order.

During the evening of September 24, 1998, at a house in Lee shared by Lampron, Jansen, and Aaron Kincaid, the victim, Gail,[4] was allegedly drugged and sexually assaulted.[5] Being acquainted with all three men, Gail identified Lampron and Kincaid as the only two perpetrators, although Jansen was also present in the house at the relevant time. Kincaid purportedly showed a videotape of the incident to some friends, but it has since been destroyed.[6]

On March 25, 1999, Lampron was indicted on four charges of aggravated rape (G. L. c. 265, § 22), and on March 31, 1999,

Mass. 874 (1979)]. The court may direct that books, papers, documents, or objects designated in the summons be produced before the court within a reasonable time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents, objects, or portions thereof to be inspected and copied by the parties and their attorneys if authorized by law."

[2]A buccal swab test "involves the rubbing of a swab on the interior surface of the cheek." *Doe* v. *Senechal*, 431 Mass. 78, 79 n.4, cert. denied, 531 U.S. 825 (2000).

[3]The underlying criminal cases against Lampron in the Superior Court have been stayed pending our decision on this petition.

[4]For the sake of consistency, we use the same pseudonym for the victim as was used in a related opinion. See *Commonwealth* v. *Kincaid*, 61 Mass. App. Ct. 657, 658 n.3, *S.C.*, 444 Mass. 381 (2005). Gail was Lampron's former girl friend.

[5]We take the facts from the petition for relief pursuant to G. L. c. 211, § 3, and the materials submitted with it.

[6]Two individuals, who claimed to have viewed the videotape, purportedly identified Lampron and Kincaid as participants in the alleged assault, but they have stated that Lampron wore a mask.

he was indicted on one charge of administering a drug with intent to stupefy or overpower to enable sexual intercourse (G. L. c. 272, § 3). He then fled the jurisdiction until March, 2002, when he was returned to Berkshire County. In the meantime, Kincaid was tried and convicted on four indictments charging aggravated rape, arising from the events of September 24, 1998. See *Commonwealth* v. *Kincaid*, 61 Mass. App. Ct. 657, 657, *S.C.*, 444 Mass. 381 (2005).

Among the items produced at Kincaid's trial was a hair "barrette"[7] that Gail claimed was inserted in her vagina during the sexual assaults. DNA testing conducted at the behest of the State police crime laboratory during its investigation indicated that there was a mixed sample of DNA in sperm fraction on the barrette. Kincaid was the primary source of the DNA, a fact that he apparently did not challenge because his defense was that he had engaged in consensual sexual intercourse with Gail on the night in question. The other source of DNA on the barrette was not identified at his trial.

Once Lampron was returned to Berkshire County, the Commonwealth filed a motion to obtain a blood sample, which was allowed. DNA testing on that sample could not definitively include or exclude Lampron as a minor source of DNA found on the barrette. On May 14, 2002, Lampron filed a motion for an order to take a blood sample from Jansen, claiming that such sample would lead to material and relevant evidence that was crucial to establishing Lampron's innocence. A judge denied his motion, concluding that Lampron had failed to demonstrate the requisite probable cause for the issuance of such an order.

Lampron then hired a private investigator to obtain a sample of Jansen's DNA. During the early morning of July 23, 2004, the investigator's associate saw a person whom he believed to be Jansen leave a residence carrying two white bags of garbage. The associate obtained one of the bags from the street and brought it to the investigator, who extracted several bottles and cans. The items were placed in plastic bags and marked for evidence. They were then turned over to Brian G.D. Wraxall,

---

[7]The "barrette" that has been referred to during proceedings before the Superior Court is better described as an elastic ponytail holder with plastic balls affixed to it.

the executive director, chief forensic serologist, and technical leader of Serological Research Institute. In an affidavit, Wraxall stated that he extracted, prepared, and analyzed samples of saliva taken from the bottles and cans in the garbage of the person whom the investigator had identified as Jansen. He positively identified DNA on the bottles and cans as belonging to the same person who was the secondary DNA source on the barrette. Wraxall concluded that the primary donor was Kincaid, and the secondary donor was Jansen.[8]

To avoid any chain of custody problems involved in matching the DNA from the bottles and cans with the DNA on the barrette, Lampron filed a motion in the Superior Court for an order to compel Jansen to provide a buccal swab for DNA analysis. Both Jansen and the Commonwealth opposed Lampron's motion on the ground that the judge lacked the authority to enter such an order with respect to a private citizen. Following a hearing, the judge allowed the motion, concluding that, in accordance with Mass. R. Crim. P. 17 (a) (2), and pursuant to the standard set forth in *Matter of a Grand Jury Investigation*, 427 Mass. 221, 226, cert. denied sub nom. *A.R.* v. *Massachusetts*, 525 U.S. 873 (1998), Lampron had made the requisite showing that there was "a reasonable basis for believing ([]probable cause, if you wish)" that a buccal swab from Jansen would significantly aid Lampron's defense.[9]

Jansen and the Commonwealth both now contend that the judge lacked any authority to compel Jansen, a third party not charged with any criminal offense, to submit to a buccal swab for DNA analysis at Lampron's request. As such, they argue that the judge's order must be reversed. We disagree.

Article 12 of the Declaration of Rights of the Massachusetts Constitution provides that "every subject shall have a right to

[8]Wraxall also concluded that there was a trace amount of DNA from a third donor on the barrette. However, due to the lack of specified genetic marker traits, Wraxall opined that it was unlikely that Lampron was a donor to the mixture.

[9]In his decision, the judge noted that the Commonwealth had conceded at oral argument that the evidence sought by Lampron, if true, arguably could be exculpatory. However, this "concession" by the Commonwealth is contrary to its argument before us that the exculpatory value of Jansen's DNA is "marginal."

produce all proofs, that may be favorable to him . . . and to be fully heard in his defen[s]e by himself, or his counsel, at his election." The express purpose of art. 12 is to give criminal defendants the right to present evidence that may be exculpatory. See *Commonwealth* v. *Gagnon*, 408 Mass. 185, 196 (1990). The Commonwealth has no obligation to collect evidence that may be helpful to a defendant. See *Commonwealth* v. *Lapage*, 435 Mass. 480, 488 (2001) ("While the prosecution remains obligated to disclose all exculpatory evidence in its possession, it is under no duty to gather evidence that may be potentially helpful to the defense"). Thus, a defendant has the constitutional right to present evidence at trial that some other individual may have committed the particular crime of which the defendant has been accused. See *Commonwealth* v. *Conkey*, 443 Mass. 60, 66 (2004), and cases cited; *Commonwealth* v. *Harris*, 395 Mass. 296, 300 (1985). The defendant must show that "the acts of the other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of [the] defendant as the person who committed the crime." *Commonwealth* v. *Hunter*, 426 Mass. 715, 716-717 (1998), quoting *Commonwealth* v. *Keizer*, 377 Mass. 264, 267 (1979). Here, the means by which Lampron intends to make such a showing is a buccal swab from Jansen that, he expects, will provide exculpatory DNA evidence.

The source of the judge's authority to enter an order compelling Jansen to provide a buccal swab flows from rule 17 (a) (2) and our common law. Rule 17 (a) (2) provides that "[a] summons may . . . command the person to whom it is directed to produce the books, papers, documents, or *other objects* designated therein" (emphasis added).[10] In *Commonwealth* v. *Lampron*, 441 Mass. 265, 270 (2004), we stated that "[a] judge's power under rule 17 (a) (2) includes the power to direct a nonparty to produce documentary evidence [or objects] *prior* to trial to allow the parties to inspect such documents or objects in preparation of trial." See *Commonwealth* v. *Oliveira*, 438

---

[10]The term "summons" as used in rule 17 (a) (2) "is intended to refer to what has traditionally been expressed by the terms 'summons' and 'subpoena.' " Reporters' Notes to Rule 17, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1368 (2003).

Mass. 325, 339 n.15 (2002) (rule 17 [a] [2] permits defendant to summons objects from third party). See also K.B. Smith, Criminal Practice and Procedure § 1559 (2d ed. 1983 & Supp. 2004). Contrary to Jansen's unsupported assertion, we conclude that saliva is an "object" in the possession of a third party. See *State* v. *Little*, 249 Or. 297, 307 (1967), cert. denied, 390 U.S. 955 (1968) (bodily substances, including blood, hair, and saliva, are tangible "objects"). See also Webster's Third New Int'l Dictionary 1555 (1993) ("object" is "a discrete visible or tangible thing"). Cf. *Fathke* v. *State*, 951 P.2d 1226, 1228 (Alaska Ct. App. 1998) (palm print and fingerprints easily viewed as "objects").

We have stated that a summons issued pursuant to rule 17 (a) (2) is not a discovery tool, see *Commonwealth* v. *Lampron, supra* at 269, and it may not be used to subvert the pretrial discovery provisions of Mass. R. Crim. P. 14, 378 Mass. 874 (1978).[11] See Mass. R. Crim. P. 17 (a) (2). See also *Commonwealth* v. *Oliveira, supra*. Rule 17 (a) (2) is intended to expedite trial proceedings by avoiding delays caused when counsel undertakes the task of examining documents or objects produced in response to a summons. See *Commonwealth* v. *Lampron, supra* at 270. See also K.B. Smith, Criminal Practice and Procedure, *supra*. Here, the judge's order requiring Jansen to provide a buccal swab in advance of trial comports with the intent of rule 17 (a) (2) by avoiding the inevitable, and perhaps prolonged, delay of waiting for a laboratory to prepare and

---

[11]Pursuant to Mass. R. Crim. P. 14 (a) (2), 378 Mass. 874 (1979), a judge, on the motion of a defendant, could "issue an order of discovery requiring that the defendant be permitted to discover, inspect, and copy any material and relevant evidence [or] documents." Rule 14 (a) (2) specifically pertains to such evidence "within the possession, custody, or control of the prosecutor or persons under his direction and control." *Id.* Rule 14 is not applicable here because the object sought, Jansen's saliva, is not within the control of the prosecutor or someone under his control. However, we note that in criminal cases initiated (by indictment or complaint) on or after September 7, 2004, a defendant could file a motion for pretrial discovery of saliva under Mass. R. Crim. P. 14 (a) (2), as appearing in 442 Mass. 1518 (2004), which now permits "discovery of other material and relevant evidence," without the limitation that it be in the possession, custody, or control of the prosecutor or other specified individuals.

analyze Jansen's saliva for DNA comparison purposes once Lampron's trial has started.[12]

Before any books, papers, documents, or objects can be summonsed from a nonparty pursuant to rule 17 (a) (2), the defendant must make a factual showing that they are relevant and have evidentiary value to his defense. See *Commonwealth v. Lampron, supra* at 266-267, 269 (defendant may obtain order requiring production of treatment records of alleged rape victim where records contain information relating to issues of consent, state of mind, and motive to fabricate); *Commonwealth v. Wanis*, 426 Mass. 639, 643-645 (1998) (defendant may obtain order requiring production of records from police internal affairs division where information is relevant to material issue in criminal proceedings and could be beneficial to defense). This standard comports with the Federal analogue of rule 17 (a) (2), Fed. R. Crim. P. 17(c), on which our rule was modeled. See *Commonwealth v. Lampron, supra* at 269-270; *Matter of a Grand Jury Subpoena*, 411 Mass. 489, 500-501 (1992). See also *United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (articulating test for compulsory production of material prior to trial pursuant to subpoena). "Potential relevance and conclusory statements regarding relevance are insufficient for a Federal rule 17 subpoena." *Commonwealth v. Lampron, supra* at 269, citing *United States v. Jackson*, 115 F.R.D. 664, 667-669 (D. Kan. 1994). Rule 17 (a) (2) also provides that the summons to a third party must not be "unreasonable or oppressive." See *Commonwealth v. Oliveira, supra* at 340. The decision whether documentary evidence and objects should be produced prior to trial under rule 17 (a) (2) is reserved to the sound discretion of the judge. See *Commonwealth v. Lampron, supra* at 271, citing *Commonwealth v. Wanis, supra* at 642.

Here, Jansen's DNA has significant relevance and evidentiary value to Lampron's defense. Lampron has shown that DNA testing performed by Wraxall indicated the clear presence of Jansen's DNA on the barrette and, in Wraxall's opinion, the

---

[12]We note that Orchid Cellmark, the laboratory that performed DNA testing of the barrette at the behest of the State police crime laboratory, received the barrette on May 11, 2001, but did not issue the report of its analysis until June 14, 2001.

absence of DNA that could be conclusively matched to
Lampron. Without commenting on the strength or weakness of
the Commonwealth's evidence against Lampron as a whole, the
exculpatory value of this factual showing cannot be minimized
or deemed inconsequential. Thus, in light of the possible chain
of custody issue, a buccal swab from Jansen, in advance of
trial, is critical to the preparation of Lampron's defense against
charges of aggravated rape. Moreover, we conclude that the
buccal swab test, in these circumstances, is reasonable. See *Doe*
v. *Senechal*, 431 Mass. 78, 85, cert. denied, 531 U.S. 825 (2000)
(buccal swab test reasonable where it will significantly aid in
determination of paternity). See also *Commonwealth* v. *Maxwell*,
441 Mass. 773, 777 n.9 (2004) (because buccal swab test does
not involve skin penetration, it is arguably less intrusive than
taking of blood sample extracted by needle).

Contrary to the arguments raised by Jansen and the Com-
monwealth, the judge's order does not implicate Jansen's rights
under the Fourth Amendment to the United States Constitution
and art. 14 of the Massachusetts Declaration of Rights. Not
every search and seizure has a constitutional dimension. See
*Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 714-715 (1986);
*Commonwealth* v. *Clegg*, 61 Mass. App. Ct. 197, 203 (2004).
The Fourth Amendment and art. 14 apply "to searches and
seizures conducted by or at the direction of the State." *District
Attorney for the Plymouth Dist.* v. *Coffey*, 386 Mass. 218, 221
(1982). "The constitutional analysis is triggered only when
either the Federal or State government is significantly involved
in the search, either participating in it or directing it in some
way." *Id.* See generally J.A. Grasso & C.M. McEvoy, Suppres-
sion Matters Under Massachusetts Law § 3-3 (2004); 1 W.R.
LaFave, Search and Seizure § 1.8 (4th ed. 2004). We recognize
that a private individual may become an agent of the State, with
constitutional implications, if government officials have
instigated or participated in a search or seizure by that
individual. See *Commonwealth* v. *Leone*, 386 Mass. 329, 333
(1982); *Commonwealth* v. *Richmond*, 379 Mass. 557, 561-562
(1980); *Commonwealth* v. *McCambridge*, 44 Mass. App. Ct.
285, 289 (1998). See also *Coolidge* v. *New Hampshire*, 403
U.S. 443, 487 (1971) ("The test . . . is whether [a private

individual], in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the [S]tate"). That has not happened in this case.

Here, there simply has been no governmental involvement in the procurement of Jansen's DNA by Lampron. Quite to the contrary, the Commonwealth has advocated vigorously against Lampron's efforts to obtain a buccal swab from Jansen. Lampron is not seeking Jansen's DNA at the behest of the Commonwealth in order to advance a criminal prosecution. Rather, Lampron, acting in a private capacity, is furthering his own ends by attempting to secure all favorable proofs in advance of trial which, as he has shown, will significantly aid in the preparation of his defense by demonstrating a lack of physical evidence to support the charges against him. See *Hooper* v. *Sachs*, 618 F. Supp. 963, 968 (D. Md. 1985), aff'd, 823 F.2d 547 (4th Cir.), cert. denied, 484 U.S. 954 (1987) (where purpose of private citizen in conducting search pursuant to discovery order is to further individual interest, search retains its private character and is not subject to Fourth Amendment strictures). Cf. *Doe* v. *Senechal, supra* at 84-85 (Fourth Amendment has no application to private litigants seeking to obtain buccal swab paternity test in civil action). The Fourth Amendment and art. 14 have no application in the present context.[13]

We make a final observation as to any future action by the Commonwealth to obtain a buccal swab from Jansen. As we have discussed, the Commonwealth's efforts in this regard, constituting governmental action, would implicate the Fourth Amendment and art. 14. See *District Attorney for the Plymouth Dist.* v. *Coffey, supra* at 221. The procedures with which the Commonwealth must comply in order to satisfy constitutional muster will vary depending on the stage of the proceedings at

---

[13]At this time, we do not decide whether the buccal swab obtained by Lampron could, at some later date, be turned over to the Commonwealth for use in a future criminal prosecution without implicating Jansen's constitutional rights. See *Commonwealth* v. *Leone*, 386 Mass. 329, 333 (1982), and cases cited ("Evidence discovered and seized by private parties is admissible without regard to the methods used, unless State officials have instigated or participated in the search"); *Commonwealth* v. *McCambridge*, 44 Mass. App. Ct. 285, 289 (1998) (no violation of Fourth Amendment or art. 14 "when evidence is seized by private parties who are not acting as agents of the police and subsequently turned over to the police").

which a buccal swab is sought. Before an individual has been charged, we have concluded that a search warrant for a blood sample can be issued only on a showing of probable cause that the subject of the warrant committed a crime and that the evidence sought would aid in its investigation. See *Matter of Lavigne*, 418 Mass. 831, 835-836 (1994). At this stage, we also have stated that "in deciding whether to order an extraction of blood, the judge 'must weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect's constitutional right to be free from bodily intrusion on the other.' " *Id.* at 836, quoting *Matter of an Investigation into the Death of Abe A.*, 56 N.Y.2d 288, 291 (1982). Once a grand jury investigation has begun, such evidence may be compelled only if the grand jury have "a reasonable basis for believing (have probable cause for believing, if you wish) that a blood sample will provide test results that will significantly aid . . . in their investigation of circumstances in which there is good reason to believe a crime has been committed." *Matter of a Grand Jury Investigation*, 427 Mass. 221, 226 (1998). See *Commonwealth* v. *Williams*, 439 Mass. 678, 682-683 (2003). Finally, once an individual has been indicted, a request for blood sample must be based on a showing that the "defendant's blood will probably produce evidence relevant to the question of the defendant's guilt." *Commonwealth* v. *Trigones*, 397 Mass. 633, 640 (1986). In each of these contexts, the individual from whom the sample is sought must be given notice and an opportunity to be heard. See *Commonwealth* v. *Maxwell, supra* at 778.[14]

*Order affirmed.*

---

[14]We note that Jansen has not filed a motion for the issuance of a protective order to prevent the dissemination of his DNA profile to any third party, including the Department of State Police, for entry into the State DNA database or the combined DNA index system. See G. L. c. 22E.